UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CRYSTAL MEDINA-CORCHADO, SAVANNAH KOONCE, JENNIFER KORN, CASEY SIMPSON, AND KIANA EBBIGHAUSEN, | : : : : : | CIVIL ACTION NO. 3:21-cv-00132 (JAM) |
| Plaintiffs, | : : | |
| v. | : : | |
| UNIVERSITY OF NEW HAVEN, AND ASHLEY DUNN, REBECCA JOHNSON, FREDERIC BAKER, AND BECCA KITCHELL, ALL IN THEIR INDIVIDUAL AND PROFESSIONAL CAPACITIES, | : : : : : : | August 27, 2021 |
| Defendants. | : | |

**UNIVERSITY OF NEW HAVEN'S REPLY
MEMORANDUM IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS**

Pursuant to Local Rule 7(d), Defendant, University of New Haven ("UNH" or "University"), respectfully submits this Reply Memorandum ("Reply") in response to the Plaintiffs' Opposition to UNH's Partial Motion to Dismiss ("Opposition"), (ECF 43), and as a supplement to the arguments set forth in its Memorandum of Law in Support of its Motion to Dismiss ("Motion to Dismiss"), (ECF 32).

Plaintiffs claim in their Opposition that each has stated a claim for breach contract under Connecticut law as set forth in *Gupta v. New Britain General Hosp.*, 239 Conn. 574, 592-93 (1996), and cases applying that standard. (ECF 43, Opp. at pp. 4-5.) UNH disagrees. At the outset, despite the Plaintiffs' contention in their Opposition, UNH is not arguing that Plaintiffs could not pursue a claim based on a specific contractual promise made by UNH *solely* because that promise was contained in policies or procedures adopted by UNH as part of its sexual harassment prevention policies or to comply with its obligations under federal or state anti-

discrimination statutes.  (ECF 43, Opp. at p. 5.)  Rather, UNH contends more specifically that Plaintiffs cannot state a cognizable claim for breach of contract under Connecticut law solely by alleging that UNH, as a recipient of federal funds obligated to comply with Title IX, failed to so comply.

In this regard, Plaintiffs' contend that their breach of contract claims are based upon the alleged violations of Title IX, "including but not limited to … failing to comply with its obligations under Title IX; failing to comply with the Department of Education's Guidance under Title IX; failing to provide an environment free from gender-based discrimination"; and failing to comply with the Office for Civil Rights' "Title IX Resource Guides, its Dear Colleague letter and its Q&A on Campus Sexual Misconduct (collectively 'OCR Guidance')."  (ECF 10, Am. Compl. at ¶¶ 20-22, 226, 249, 278, 307, 337.)  These general allegations fail for several reasons.

First, reliance upon general statements that UNH will enact policies to comply with its statutory obligations under Title IX to prohibit and prevent sexual harassment is insufficient, standing alone, to support a claim for breach of contract.  Second, a contractual claim must be based upon the specific policies and procedures adopted by UNH and cannot be based on unspecified OCR guidance documents interpreting Title IX.  Third, a claim for breach of contract alleging that UNH did not do an adequate job of meeting its Title IX obligations is not cognizable in Connecticut.  Fourth, Plaintiffs must identify in the Amended Complaint the specific promise made by UNH that is alleged to have been breached so that the Court can determine if it is sufficient to support a claim.  Fifth, Plaintiffs must identify a factual basis that, if proven, would be sufficient to show that UNH did not fulfill the specific identified promise.

The Amended Complaint does not satisfy these criteria, and therefore the breach of contract claims must be dismissed.

1. **A Breach of Contract Claim Cannot be Based Solely on an Alleged Statutory Violation.**

Each of the five plaintiffs in this case are pursuing a private right of action based on an alleged violation of Title IX. The statute and the case law interpreting it provide very specific criteria for making such claims. Here, Plaintiffs are alleging a Title IX claim based on "deliberate indifference." (ECF 10, Am. Compl. at ¶¶ 219, 242, 264, 293, 323); *see Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 648 (1999) (holding that school administrators are deemed "deliberately indifferent" to acts of student-on-student harassment only where the recipient's response is "clearly unreasonable in light of the known circumstances.") As Plaintiffs have conceded in their Opposition, a private civil action under Title IX is subject to a three-year statute of limitations. (ECF 32, Mot. to Dismiss at p. 7; ECF 43, Opp. At p. 1.) Plaintiffs improperly seek to expand this limited cause of action by making a general allegation that by accepting Title IX funding and the statutory obligations that accompany that funding, UNH has entered into a written contract with its students requiring it to follow, for example, all Office for Civil Rights ("OCR") guidance. (ECF 10, Am. Compl. at ¶¶ 20-22, 226, 249, 278, 307, 337.)

Specifically, and as but one example, in their Opposition, Plaintiffs allege that upon enrolling at UNH they were entitled to the statutory protections of Title IX, as well as the same protections of Title IX as a matter of contract law. (ECF 43, Opp. at pp. 2-3.) There is nothing in the cases cited by the Plaintiffs, as explained further below, that would support such an expansion of the Title IX cause of action.

By raising this issue in its Motion to Dismiss, UNH gave Plaintiffs the opportunity to clarify that they were basing the contract claims on specific written policies of UNH and not on

3

the Title IX statute and regulations as appeared to be the case from the allegations in the Amended Complaint. Plaintiffs made no such clarification but continued to cite to Title IX, its regulations and policy guidance as the basis for its breach of contract claims. (ECF 43, Opp. at pp. 4, 7.) The effect of this argument, if accepted, would be to expand the Title IX private cause of action well beyond its current parameters both in terms of the limitations period, which in Connecticut is six years for breach of contract, *see* Conn. Gen. Stat. §52-576, as well as for substantive claims. This should not be permitted as a matter of public policy for the same reasons expressed by the United States Supreme Court in *Astra USA, Inc. v. Santa Clara Cnty, California*, 563 U.S. 110 (2011) (declining to permit a breach of contract claim based upon a third party beneficiary theory).

Each of the five Plaintiffs in this case are pursuing a private right of action based on an alleged violation of Title IX. This statute and the case law interpreting it provide specific criteria for making such claims. In addition, such claims are subject to a three-year statute of limitations. Plaintiffs improperly seek to expand this cause of action by making a general allegation that by accepting Title IX funding and the statutory obligations that accompany that funding, UNH has entered into a written contract with its students requiring it to follow, for example, all OCR guidance. There is nothing in the cases cited by the Plaintiffs that would support such an expansion of the Title IX cause of action.

2. **Plaintiffs Cannot Solely Rely Upon Title IX Regulations and Guidance as the Basis for the Contract Claims.**

Plaintiffs' reliance on quoted language from *Doe v. Quinnipiac*, 404 F. Supp. 3d 643, 668 (2019), to claim that they can rely upon Title IX regulations and guidance as the basis for the contract claims is misplaced. (ECF 43, Opp. at pp. 5-6.) In that case, and others citing the same proposition, the Court explained that the existence of a statutory private right of action would not

prevent a plaintiff from pursuing a contract claim "based on a school's violations of its own specific policies and procedures." *Doe*, 404 F. Supp. 3d at 668. However, as admitted by the Plaintiffs in their Amended Complaint, they seek to base a breach of contract claim not on specific policies enacted by UNH in compliance with Title IX, but instead on unspecified Title IX regulations and policy guidance from the Department of Education's OCR. (ECF 10, Am. Compl. at ¶¶ 20-22, 226, 249, 278, 307, 337.) All of the cases cited by Plaintiffs and UNH make clear that the basis for the alleged contracts in those cases were university documents such as handbooks, bulletins and specific university policies, not a statute. *See e.g. Quinnipiac*, 404 F. Supp. 3d at 667-71; *Johnson v. Schmitz*, 119 F. Supp. 2d 90, 95-96 (D. Conn. 2000) (alleging breach of Yale's own procedures); *Ross v. Creighton Univ.*, 957 F.2d 410, 415-16 (7th Cir. 1992) (alleging breach of five specific promises). Indeed, several of the authorities relied upon by the Plaintiffs are provided to schools as guidance and do not have the force of law. *See Tubbs v. Stony Brook Univ.*, 343 F. Supp. 3d 292, 309 (S.D.N.Y. 2018) (holding that an OCR Dear Colleague Letter "does not create a basis for civil damages under Title IX"); *see also Weckhorst v. Kansas State Univ.*, 241 F. Supp. 3d 1154, 1166 (D. Kan. 2017), *aff'd sub nom.*, *Farmer v. Kansas State Univ.*, 918 F.3d 1094 (10th Cir. 2019) (declining to consider an OCR "Dear Colleague Letter" or Question and Answer document because they did not "carry the force of law").

Guidance issued by OCR often provides universities with discretion about how to comply with statutory and regulatory language. In *Tubbs v. Stony Brook Univ.*, the court described a variety of OCR guidance provided to universities and explained that the guidance offers universities "flexibility" in the manner in which they respond to sexual harassment and identified that sexual harassment investigations will vary depending on the nature of the allegations. *See*

343 F. Supp. 3d at 308.  There is not one correct way to fulfill the Title IX obligations and therefore the plain language of the regulations and OCR guidance cannot serve as the basis for a contract claims.  *Id.* (explaining that OCR guidance from 2001 and 2011 "defers to schools to decide the commensurate response to allegations, in light of the complainants' requests for urgency or confidentiality").

This attempt to expand on the Title IX private right of action by claiming that the statute, its regulations and guidance form a binding contractual commitment must be rejected. Instead, the Plaintiffs must identify specific promises made by UNH to these Plaintiffs.

### 3. Plaintiffs Fail to Distinguish *McNeil v. Yale Univ.*

It also is insufficient under Connecticut law to base a breach of contract claim on a university's statements that it prohibits discrimination, in this case sexual harassment, and that it will enact policies and procedures to further that goal.  *See McNeil v. Yale Univ*. 436 F. Supp. 3d 489, 531-32 (D. Conn 2020).  Plaintiffs summarily dismiss the analysis and holding of *McNeil* in a footnote, concluding merely that *McNeil* is "factually distinct."  (ECF 43, Opp. at p. 6 n. 1.) This is insufficient.  Although *McNeil* may involve slightly different wording, the Plaintiffs fail to show how their generalized claims that they were entitled to "a prompt, adequate, reliable and impartial investigation of all claims of sexual misconduct," (ECF 43, Opp. at pp. 2-3), is sufficiently different from the claims found insufficient in *McNeil*.  Like the claims made in *McNeil*, these claims would require review of "'principles of duty, standards of care, and reasonable conduct associated with the law of torts,'" as well as discretionary decisions by the University about how to implement this requirement.  *See McNeil*, 436 F. Supp. 3d at 532 (quoting *Gupta,* 239 Conn. at 590).  As the *McNeil* court concluded, such claims are barred in Connecticut by *Gupta*.  *Id.* at 532.

### 4. Plaintiffs Must Allege a Specific, Clearly Defined Promise.

Plaintiffs' contention that they have identified specific promises by UNH is misplaced. (ECF 43, Opp. at pp. 6-7)  As stated above, general allegations that UNH failed to comply with its Title IX obligations, standing alone, are insufficient to support a breach of contract claim.  In this regard, a Connecticut federal district court decision by the Honorable Janet B. Arterton is instructive.[1]  In *Doe v. Wesleyan,* C.A. No. 3:19-cv-01519 (JBA), 2021 WL 664010 at *9 (D. Conn. Feb. 19, 2021), Judge Arterton confirmed that a motion to dismiss is proper to challenge a breach of contract claim brought against a university.  In that decision, the Court conducted a careful review of each separate theory alleged to support a single breach of contract count and dismissed those that did not pass muster under the *Gupta* analysis. *Id.* at *7-9.  That decision reinforces the requirement that, even at the pleading stage, a plaintiff must set forth the specific language that forms the basis for the alleged breach of contract. *Id.* at *7.

In denying the defendant's motion to dismiss the plaintiff's first breach of contract allegation, the court distinguished the holding in *Gally v. Columbia Univ.,* 22 F. Supp. 2d 199, 208 (S.D.N.Y. 1998), which held that a general, stand-alone allegation that the University promised fair and equal treatment and general adherence to anti-discrimination laws was insufficient to state a claim for breach of contract. *See Wesleyan,* 2021 WL 664010 at *7-8.  That court found that, where a similar general statement of fair treatment regarding the disciplinary process was further defined by reference to s*pecific* alleged violations of the University handbook, the plaintiff had properly pled a claim for breach of contract. *Id.* at *7-8.  Judge Arterton then reviewed the remaining breach of contract allegations and dismissed those that did not meet the *Gupta* standard. *Id.* at *8-9.  For example, she dismissed a claim that the

---

[1] The Honorable Janet B. Arterton also presided over the cases of *Quinnipiac*, 404 F. Supp. 3d at 648, and *Johnson*, 119 F. Supp. 2d at 91.

University had breached its contract by failing to assemble a new disciplinary panel after the appeals board remanded the case, finding that the plain language cited did not create such an obligation.[2] *Id.* at *8.

The additional cases cited by the Plaintiffs contain a similar analysis, requiring the plaintiff to identify the specific promises that allegedly support the claim for breach of contract. *See Quinnipiac*, 404 F. Supp. 3d at 667-71 (denying motion for summary judgement where a general claim of breach of promise to comply with Title IX was supported by references to 29 specific provisions and sufficient evidence to create a question of fact for the jury); *Johnson*, 119 F. Supp. 2d at 95-96; *Ross*, 957 F.2d at 415-16.  For example, in *Doe v. Quinnipiac*, the generalized assertion that Quinnipiac would comply with Title IX was further defined by specifically alleged requirements, including that Quinnipiac would provide written notice of charges 48 hours before a hearing, among other promises.  *See* 404 F. Supp. 3d at 669.

Here, unlike the cases cited above, the actual breach of contract counts are generic in nature rather than specific.  Plaintiffs' allegations are broad and undefined.  Unlike *Doe v. Quinnipiac*, the Plaintiffs' allegations fail to meet the "exacting standard" of *Gupta,* which requires each plaintiff to identify "a special promise ... outside the purview of normal educational expectations." *Faigel v. Fairfield Univ.*, 75 Conn. App. 37, 37 (2003) (determining that the contract alleged by the plaintiff, that the university promised to allow her to transfer "many credits" from her prior institution, was insufficiently specific and questioning, "How many is

---

[2] UNH understands the limitations imposed by seeking review of the contract allegations through a motion to dismiss, rather than waiting until summary judgment, and that due to the requirement that the Court accept the allegations as true for purposes of review some claims may pass muster that would not survive a motion for summary judgment. However, Plaintiffs should not be permitted to avoid the pleading requirements identified in *Gupta* by failing to identify specific promises by UNH. Further, Plaintiffs reference to documents that are not identified by year makes it impossible for UNH to determine if the alleged promises were relevant to the claims made by Plaintiffs or for UNH to provide the document in its entirety so that the Court could review the language in context. Hence, any ruling that any of the allegations are sufficient should be preliminary and subject to further review through the discovery process.

many?"). This special, specific promise must be "precise and based on specific contractual terms or provisions," *Kloth-Zanard v. Amridge Univ.*, No. 3:09CV606 JBA, 2012 WL 2397161, at *4 (D. Conn. June 25, 2012), and not "[g]eneral or vague," *Hope Acad. v. Friel*, No. CV030081183S, 2004 WL 1888909, at *2 (Conn. Super. Ct. July 22, 2004). Despite acknowledging this pleading requirement, Plaintiffs' Opposition only identifies "promises" that are general and broad, akin to those dismissed in *McNeil*.[3]

> **5. Plaintiffs do not Provide Factual Allegations that Support a Breach of the Specific Identified Promises.**

Plaintiffs acknowledge that they are required to state enough facts in support of their claims to establish that those allegations, if accepted as true, will state a claim that is plausible on its face. (ECF 43, Opp. at p. 4.) However, mere assertions that rights were violated are insufficient. (ECF 32, Mot. to Dismiss at pp. 2-3.) In this regard, Plaintiffs fail to provide sufficient factual allegations from which a Court could conclude that UNH failed to comply with a specific contractual commitment; instead, Plaintiffs include generalized statements that UNH was required to comply with Title IX and all federal guidance documents. The counts in the Amended Complaint alleging breach of contract contain the same alleged basis for the breach -- the same broadly referenced "official publications, including but not limited to its Handbook, Title IX Policy Grievance Policies and Procedures, and Sexual Harassment and Misconduct Policy" -- against each Plaintiff, even though the factual claims of each Plaintiff vary significantly. (ECF 10, Am. Compl. at ¶¶ 224, 226, 247, 249, 276, 278, 305, 307, 335, 337; ECF 43, Opp. at pp. 6-7.)

---

[3] Two of the alleged "specific" promises, the promise to abide by all Title IX statutory requirements when responding to reports of sexual misconduct and the promise to conduct a prompt, adequate, reliable and impartial investigation of all claims of sexual misconduct per UNH's complaint procedure, (ECF 43, Opp. at pp. 6-7), are insufficient for the reasons discuss in Section 5 of this Reply.

Plaintiffs do attempt to provide the necessary specificity in their Opposition (ECF 43 at p. 7); however, they fail to provide specific factual allegations sufficient to support the alleged breach. For example, while this specific allegation is not contained in any of the Counts alleging breach of contract, the Plaintiffs claim in their Opposition that UNH has made a contractual commitment that "all responsible employees will report student reports of sexual misconduct to the Title IX coordinator." (ECF 43, Opp. at p. 7.) However, the Amended Complaint does not contain any specific factual allegation that this did not occur.[4] (*See e.g.* ECF 10, Am. Compl.) Similarly, Plaintiffs allege in their Opposition that UNH failed to apply the policy definitions for sexual misconduct when investigating sexual misconduct reports, without citing to any specific factual allegation that UNH made an incorrect finding with respect to the policy definitions. (ECF 43, Opp. at p. 7.) In fact, in Paragraph 55 of Amended Complaint, Plaintiff Medina-Corchado alleges that Ashley Dunn offered to speak to the accused students to inform them that taking non-consensual videos of sexual acts would be a violation of the UNH Sexual Misconduct Policy, an acknowledgement that, at least for this Plaintiff, UNH did not fail to apply its policy definition to alleged misconduct. (ECF 10, Am. Compl. at ¶ 55.) Plaintiffs' generalized allegations are lacking in factual support and are insufficient to meet the standard for breach of contract articulated in *Gupta*. As such, this Court should dismiss all five breach of contract claims.

### 6. Conclusion.

For the reasons expressed above, UNH respectfully requests that this Court grant its Motion to Dismiss.

---

[4] Indeed, it appears that in crafting the breach of contract claims in the Amended Complaint, the Plaintiffs cited to a laundry list of handbook provisions found to be sufficient to form a contract in *Doe v. Quinnipiac Univ.*, 404 F. Supp. 3d 643 (D. Conn 2019), without taking on any responsibility to include factual allegations showing a basis for a claim that UNH violated these provisions.


DEFENDANT,
UNIVERSITY OF NEW HAVEN


By: /s/ Linda L. Yoder
    Linda L. Yoder (ct01599)
    Shipman & Goodwin LLP
    One Constitution Plaza
    Hartford, CT  06103-1919
    Telephone (860) 251-5000
    Facsimile (860) 251-5315
    lyoder@goodwin.com