UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CRYSTAL MEDINA-CORCHADO, *et al.*,
    *Plaintiffs*,

v.

UNIVERSITY OF NEW HAVEN, *et al.*,
    *Defendants*.

No. 3:21-cv-132 (JAM)

**ORDER GRANTING PARTIAL MOTION TO DISMISS**

The plaintiffs are five female students who attended the University of New Haven (UNH). They have filed this lawsuit claiming that UNH violated their rights in connection with its investigation and response to complaints they raised about sexual misconduct. Because the plaintiffs have not alleged facts to plausibly support their claims for breach of contract, I will grant the defendants' partial motion to dismiss the contract claims.

### BACKGROUND

The plaintiffs attended UNH at various times from 2015 to 2020.[1] According to the amended complaint, they were subject by male students to numerous acts of sexual abuse including rape, sexual assault, sexual exploitation, and sexual harassment.[2]

The plaintiffs sought help from UNH administrators, but the administrators were allegedly indifferent to their complaints and often discouraged them from pursuing a formal investigation.[3] When there was a formal investigation or other disciplinary action, the students say, it was slow and haphazard.[4] For example, one student claims that an administrator denied

---

[1] Doc. #10 at 2 (¶ 15).
[2] *Ibid.* (¶ 16); *see also id.* at 5–12, 17, 21–24, 27–28 (¶¶ 28–39, 40–64, 65–74, 111–15, 145–64, 176–84) (detailing specific acts).
[3] *See, e.g., id.* at 5, 8, 12, 24, 28 (¶¶ 33, 54, 77, 166, 187).
[4] *See, e.g., id.* at 13–15, 20–21 (¶¶ 86–101, 133–44).

1

that her rape had been a "violent assault" and urged her not to pursue a formal investigation.[5] In another instance, the school issued a "no contact" order in the wake of an alleged violent rape of one of the students.[6] But then, the student claims, the rapist repeatedly violated the order without consequence, and the school's investigation dragged on for a full year.[7]

The students have sued UNH. They primarily allege statutory claims against UNH for violating Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq*. Their complaint details the requirements of Title IX as follows:

a. In response to a Title IX complaint involving sex-based discrimination or harassment, schools must respond with a prompt, adequate, reliable, and impartial investigation into those complaints and provide an appropriate remedy to stop the discrimination and/or harassment and prevent its reoccurrence.

b. Whether or not a student files a complaint of alleged sexual misconduct or otherwise asks the school to take action, where the school knows or reasonably should know of an incident of sexual misconduct, the school must take steps to understand what occurred and to respond appropriately. In particular, when sexual misconduct is so severe, persistent, or pervasive as to deny or limit a student's ability to participate in or benefit from the school's programs or activities, a hostile environment exists and the school must respond.

c. Adopt and publish grievance procedures for complaints involving sexual misconduct, which are prompt and equitable. To be prompt and equitable the school must provide notice of the school's grievance procedures, including how to file a complaint, to students; the school must actually apply its grievance procedures in response to complaints; the school must ensure an adequate, reliable, and impartial investigation of complaints, including the opportunity to present witnesses and other evidence; and the school's policy/procedures must provide assurance that the school will take steps to prevent recurrence of sexual misconduct and to remedy its discriminatory effects, as appropriate.

d. In its investigation, it is the school's burden, not the parties', to gather sufficient evidence to reach a fair, impartial determination as to whether sexual misconduct has occurred, and if so, whether a hostile environment has been created that must be redressed.

e. An equitable investigation of a Title IX complaint requires a trained investigator to

---

[5] *Id.* at 12 (¶ 77).
[6] *Id.* at 17 (¶¶ 111–16).
[7] *Id.* at 17–18, 20–21 (¶¶ 117–22, 133–44).

analyze and document the available evidence to support reliable decisions, objectively evaluate the credibility of parties and witnesses, synthesize all available evidence—including both inculpatory and exculpatory evidence—and take into account the unique and complex circumstances of each case.[8]

The complaint further alleges that Title IX requires UNH "to designate at least one employee as the Title IX Coordinator, whose responsibilities include, but are not limited to, coordinating the school's compliance with Title IX; overseeing all complaints of sex discrimination; and identifying and addressing any patterns or systemic problems that arise during the review of such complaints."[9]

In addition to these statutory claims under Title IX, the plaintiffs allege claims for breach of contract against UNH. These claims do not appear to be based on any kind of traditional written agreement that has been negotiated by the parties and reduced to a signed writing. Instead, the breach-of-contract claims are based purely on various UNH "policies" that have been issued in accordance with Title IX.

Under a heading "UNH's Contractual Obligations Pursuant to its Own Policies and Express Promises," the complaint alleges the following about UNH's Sexual Misconduct Policy:

> 23. UNH's own Sexual Misconduct Policy ("the policy") specifically states that the "University is obligated by Title IX of the Education Amendments of 1972 to Investigate allegations of sexual misconduct."
>
> 24. UNH's policy states that "students wishing to report incidents of sexual misconduct (sexual assault, non-consensual sexual contact, non-consensual sexual intercourse, sexual exploitation, sexual harassment, dating violence, intimate partner violence, domestic violence, stalking, and intimidation) may choose any/all of the following options," and then goes on to list a disclosure option of a "responsible employee or Title IX coordinator directly."
>
> 25. Pursuant to the policy, "all University employees, other than professional/pastoral counselors or health center staff, are considered 'responsible employees' under Title IX and are required to report all known facts to the Title IX Coordinator."

---

[8] *Id.* at 3–4 (¶ 21).
[9] *Id.* at 4 (¶ 22).

    26.    UNH's policy designates specific "reporting offices" where students are "encouraged" to make reports of sexual misconduct, and such designated "reporting offices" include, but are not limited to, the Campus Police Department, the Dean of Students Office, directly to the Title IX Coordinator, and the West Haven Police Department.

    27.    UNH's policy further guarantees students that "the University of New Haven complaint procedure provides for a prompt, adequate, reliable, and impartial investigation of all claims of sexual misconduct. The University encourages all those who have experienced any form of sexual misconduct to report the incident promptly, to seek out all available campus and community resources, and pursue University conduct action, and/or legal proceedings against the offender."[10]

For each of the breach-of-contract claims, the complaint later alleges that each plaintiff's "application to and enrollment as a student a[t] UNH was done in reasonable reliance on UNH's representations, and with the reasonable expectation, that UNH would implement and enforce the provisions and policies set forth in its official publications, including but not limited to its Handbook, Title IX Policy Grievance Policies and Procedures, and Sexual Harassment and Misconduct Policy."[11]

The complaint then alleges without more that "[a]n express contract or, alternatively, a contract implied in law or in fact was formed between [each plaintiff] and UNH."[12] It goes on to allege that UNH "breached its contract with [each plaintiff] in a variety of ways, including but not limited to the following:

    a. Failing to adequately investigate her complaints;
    b. By repeatedly discouraging her from pursuing her rights under the school's policies and federal law;
    c. Failing to comply with its obligations under Title IX;
    d. Failing to comply with the Department of Education's Guidance on Title IX;
    e. Failing to provide an environment free from gender-based discrimination and harassment and its promise to address gender-based misconduct; and
    f. Failing to comply with its obligations in response to student complaints of sexual misconduct, as outlined in UNH's policies and publications.[13]

---

[10] *Id.* at 4 (¶¶ 23–27).
[11] *Id.* at 34–35 (¶ 224). Identical allegations appear in each of the plaintiffs' breach of contract claims.
[12] *Id.* at 35 (¶ 225).
[13] *Id.* at 35 (¶ 226).

UNH has now filed a partial motion to dismiss seeking to dismiss the plaintiffs' breach-of-contract claims.[14]

## DISCUSSION

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless the facts it recites are enough to state plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[15] As the Supreme Court has explained, this "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. In other words, a valid claim for relief must cross "the line between possibility and plausibility." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

In addition, a complaint cannot rely on conclusory allegations. *See Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019). A complaint that makes a threadbare recital of the elements of a cause of action without including supporting factual allegations does not establish plausible grounds for relief. *Id*.

Title IX provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Sexual harassment is a form of discrimination prohibited by Title IX. *See Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 649–50 (1999). A college or university that

---

[14] Doc. #32. UNH has also moved to dismiss part of the Title IX claim as alleged by plaintiff Medina-Corchado on the ground that it is barred by Title IX's three-year statute of limitations to the extent that it relies on acts occurring in 2016. Because Medina-Corchado does not oppose this aspect of the defendants' motion, I will dismiss the time-barred portion of Medina-Corchado's Title IX claim. In addition, the plaintiffs have also separately stipulated to the dismissal of their claims for tortious interference with contract. Doc. #46. As a result, the only remaining claims in this action are for violations of Title IX and breach of contract against UNH.

[15] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

receives federal funding may be liable under Title IX for deliberate indifference to acts of student-on-student sexual harassment if it acts with deliberate indifference and if the harassment is so severe that it effectively bars the victim's access to an educational opportunity or benefit. *See id.* at 650–51.

UNH does not move to dismiss the plaintiffs' Title IX claims. Instead, UNH moves to dismiss the plaintiffs' breach-of-contract claims which in turn—as alleged in the complaint—are premised on obligations imposed on UNH by Title IX.

As an initial matter, UNH devotes much of its briefing to arguing that the plaintiffs have failed to allege facts to support a claim for educational malpractice.[16] But the plaintiffs are not alleging a *tort* claim for educational malpractice. They are alleging claims for *breach of contract*. And their contract claims have to do with alleged promises relating to their basic safety and security rather than to the adequacy of any educational services. Whatever constraints that may exist under Connecticut law on a claim for educational malpractice have nothing to do with the plaintiffs' claims here. *See Doe v. Quinnipiac Univ.*, 404 F. Supp. 3d 643, 667 (D. Conn. 2019) (similarly distinguishing educational malpractice tort claim from contract claim).

More to the point, UNH faults the complaint "for fail[ure] to cite to language that is sufficiently specific under Connecticut law to form an enforceable contract."[17] I agree.

By way of background, the elements of a breach of contract claim under Connecticut law are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages. *See CCT Commc'ns, Inc. v. Zone Telecom, Inc.*, 327 Conn. 114, 133 (2017). The issue here goes to the first of these elements: the formation or existence of a contractual agreement.

---

[16] Doc. #32-1 at 6–7 (citing *Gupta v. New Britain Gen. Hosp.*, 239 Conn. 574, 592–93 (1996)).
[17] *Id.* at 4.

"It is a fundamental principle of contract law that the existence and terms of a contract are to be determined from the intent of the parties," and "[t]he parties' intentions manifested by their acts and words are essential to the court's determination of whether a contract was entered into and what its terms were." *Auto Glass Exp., Inc. v. Hanover Ins. Co.*, 293 Conn. 218, 225 (2009). Whether viewed under a theory of express contract or implied contract, the existence of a contract depends on an actual agreement, and it must be proved that the party who is charged with breaching a contract agreed—either by words or action or conduct—to undertake a contractual commitment in the first place. *See Therrien v. Safeguard Mfg. Co.*, 180 Conn. 91, 94 (1980).

The complaint here falls well short of alleging non-conclusory facts to show that UNH intended to create any contractual relationship with its students with respect to its procedures governing reports of sexual misconduct. To begin with, the complaint is vague and confusing about just what is the "contract" between the plaintiffs and UNH. On the one hand, one part of the complaint details terms as recited above of UNH's current "Sexual Misconduct Policy."[18] But then each of the breach-of-contract claims as alleged in a later part of the complaint goes on to cite a non-exclusive list of *other* alleged policies as the basis for the claim: "official publications, including but not limited to its Handbook, Title IX Policy Grievance Policies and Procedures, and Sexual Harassment and Misconduct Policy."[19] The complaint does nothing to describe the contents of these additional policies.

Even as to the terms of the Sexual Misconduct Policy which the complaint does describe, the complaint describes the terms of this policy in the present tense and without alleging that this particular policy was in effect during the times relevant to the complaint from 2015 to 2020

---

[18] Doc. #10 at 4 (¶¶ 23–27).
[19] *Id.* at 34–35 (¶ 224).

when the plaintiffs were students at UNH. It does not quote from the policy or cite specific provisions of the policy.

In *McNeil v. Yale University*, 436 F. Supp. 3d 489 (D. Conn. 2020), *aff'd in part, vacated in part on other grounds,* 2021 WL 5286647 (2d Cir. 2021), Judge Bolden considered a breach-of-contract claim arising from various policies issued by Yale University. He concluded in relevant part that "any promises allegedly giving rise to a breach of contract claim must be specific," and that "[t]he general language relied on by Plaintiffs from Yale's Equal Opportunity Statement, Undergraduate Regulations and Sexual Misconduct Policies cannot result in specific contractual promises." *Id.* at 532; *see also Posso v. Niagara Univ.*, 518 F. Supp. 3d 688, 704 (W.D.N.Y. 2021) (noting that "[a] university's general policy statements, rules, or guidelines about fair and equal treatment cannot support a breach of contract claim"). The same concerns apply here where the plaintiffs have failed to reasonably specify the policies and specific provisions on which they base their breach-of-contract claims.

Beyond this vagueness problem is the lack of factual allegations to show that any of UNH's various policies create no less than contractual obligations. The inference is far from obvious or plausible on its face. The fact that an educational institution may issue a policy does not tend to suggest that the policy creates a contract for which a student may sue the institution for breach of contract if the institution does not follow its policy.

The inference is especially tenuous in the context alleged here. As noted above, the complaint is primarily framed in terms of UNH's alleged failure to follow the statutory and regulatory obligations imposed under Title IX. The breach-of-contract claims are then tagged on to the Title IX claims in a manner to suggest that every violation of Title IX perforce amounts to

a simultaneous breach of contract. At oral argument, the plaintiffs were unable to identify any contractual obligation that was distinct from an obligation already imposed by Title IX.

As has been recognized in the employment discrimination context, the fact that an employer announces a company policy to obey laws against discrimination does not mean that the employer's violation of these laws renders the employer additionally liable for breach of contract. In *Peralta v. Cendant Corp.*, 123 F. Supp. 2d 65 (D. Conn. 2000), the employee alleged that the company employer's anti-discrimination policy formed an implied contract. Judge Arterton rejected that argument, noting that "[t]he language of the anti-harassment policy that plaintiff urges as the basis of his implied contract claim does not indicate that defendant is undertaking any contractual obligations towards the plaintiff; rather, it obliges Cendant to comply with federal and state anti-discrimination laws, and to undertake an investigation upon receiving complaints of discrimination and/or harassment." *Id.* at 83. Judge Arterton went on to note that "[a]s any promises in the policy are general statements of adherence to the anti-discrimination laws, standing alone they do not create a separate and independent contractual obligation." *Id.* at 84.

Indeed, Title IX itself requires universities to publish their grievance procedures. *See* 34 C.F.R. § 106.8(b)–(c). But under the plaintiffs' theory, if a university like UNH complies with the publication requirement of Title IX, this itself creates an independent contractual duty for a school to do what Title IX already requires it to do. Put differently, the plaintiffs' theory means that every school that complies with Title IX's publication requirement is on the hook for breach of contract if it violates any of Title IX's procedural requirements. The plaintiffs do not point to any precedent or law that requires such consequences.

9

None of this is to say that a university can never be liable to its students for breach of contract if it fails to comply with procedures that Title IX otherwise requires and that have been adopted in university policies. *See Doe v. Quinnipiac*, 404 F. Supp. 3d at 667–672; *cf. Marini v. Costco Wholesale Corp.*, 2015 WL 1169284, at *1 (D. Conn. 2015) (allowing breach-of-contract claim to proceed where "Costco decided to call its policy an 'Employee Agreement,' to add mandatory language committing the company to exceed the protections conferred by background law, and then to require each employee to sign it"). The point is that the plaintiffs must point to specific language from specific policies that were in effect at the relevant time, and they must allege facts to show that these specific policy terms amount to no less than a bilateral contractual agreement between the university and the plaintiff students. Not enough such facts are alleged here.

## CONCLUSION

The Court GRANTS the defendants' partial motion to dismiss (Doc. #32). The breach-of-contract claims are dismissed without prejudice to the filing of an amended complaint within 30 days if there is a good faith basis for any breach-of-contract claim.

It is so ordered.

Dated at New Haven this 31st day of January 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge